**NORRISTOWN EDUCATIONAL SUPPORT PERSONNEL ASSOCIATION, Appellant,**

v.

**NORRISTOWN AREA SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1995.

Decided June 19, 1995.

Lynne L. Wilson, for appellant.

Kenneth A. Roos, for appellee.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

The Norristown Educational Support Personnel Association (the union) appeals from an order of the Court of Common Pleas of Montgomery County (trial court) affirming an arbitrator's denial of a grievance against the Norristown School District. We affirm.

The grievance was filed in opposition to the discharge of Peter Shorley, who was employed by the Norristown School District (employer) as a custodian for approximately twenty-three years. Shorley has an I.Q. bordering that of a mentally retarded individual. Employer was aware of Shorley's limited intelligence and accommodated him by permitting him to walk around outside of the school when he became frustrated. The record indicates that Shorley was, at minimum, a satisfactory employee.

During the 1992 school year, Shorley was transferred to the night shift. Consequently, he experienced stress from the impact on his sleeping habits, reduced supervision, and the fact that his mother was now home alone at night. Also, Shorley's long-time girlfriend passed away around this time. Shorley requested a change in his hours, but his request was denied.

On September 8, 1992, Shorley told his supervisor that he was leaving work, and he did leave, three and a half hours before his shift ended. In December of 1992, Shorley was suspended from his position. An investigation followed. In January of 1993, Shorley was notified that he was being discharged for inappropriate conduct toward a teacher, for leaving the school premises without permission, and for poor work performance. The union filed a grievance on behalf of Shorley, and binding arbitration ensued.

The arbitrator dismissed the allegations of inappropriate conduct toward a teacher and poor work performance, but denied the grievance on the ground that Shorley had left the school premises without permission. Article XX of the collective bargaining agreement (contract) authorizes the immediate discharge of employees who leave the school premises without permission. Original Record (O.R.), Agreement Between The Norristown Area School District and the Educational Support Personnel Association at p. 41.

Although the arbitrator ruled in the employer's favor, she expressed reluctance in sanctioning the dismissal. In her opinion, the arbitrator stated:

In a word, my hands are tied by the Pennsylvania Supreme Court. The Collective Bargaining Agreement, at Article XX. B.6 clearly states, "The *employer* [emphasis added] shall have the right to suspend or discharge any employee immediately for offenses of a serious nature, among which shall be the following

6. Leaving the work place without permission from the supervisor." Mr. Shorley did leave without permission, the Employer contractually reserved the right to discharge for such an offense, and in accordance with the dictates of [*Pennsylvania Liquor Control Board*], the Arbitrator cannot delegate that right to herself and modify the penalty. In this and the other charges against the Grievant, there are mitigating circumstances all over the place, but they cannot be used. Therefore, despite the fact that I feel the School District has the obligation to continue to employ Mr. Shorley and to accommodate his inadequacies as it has done for twenty three (23) years, I cannot order it to do so and must deny the grievance.

Reproduced Record (R.) at 22a.

The union appealed the arbitrator's decision to the trial court which affirmed the

decision of the arbitrator. This appeal followed.[1]

On appeal to this court, the union seeks resolution of one issue: whether the arbitrator (and subsequently, the trial court) erred in concluding that the decision rendered in *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989) prohibited the arbitrator from awarding the remedy that she believed to be appropriate in this case.[2]

■ Our scope of review is the essence test. Accordingly, our role is limited to determining whether the arbitrator's decision represents a reasonable interpretation of the agreement between the parties. *Philadelphia Housing Authority v. Union of Security Officers # 1*, 500 Pa. 213, 455 A.2d 625 (1983).

In the present matter, article XX of the contract provides that employees may not be suspended or disciplined without just cause. In addition, article XX lists offenses for which an employee may be discharged immediately. The list includes the offense of "leaving the work place without permission from the supervisor." O.R., Agreement Between The Norristown School District and the Educational Support Personnel Association at p. 41. After reviewing this contractual provision, the arbitrator determined that the employer's decision to discharge Shorley was reasonably derived from the contract. As previously noted, the arbitrator believed that she was required to end her inquiry with this determination. Conversely, the union maintains that the arbitrator could have considered mitigating circumstances as a basis for reducing the penalty.

Basically, this dispute stems from the parties' conflicting interpretations of *Pennsylvania Liquor Control Board*. There, a managerial employee of the Liquor Control Board (LCB) was discharged for several offenses, including manipulation of LCB documents and misappropriation of funds. The employee's union informed the LCB that the em-

ployee subsequently was hospitalized for treatment of a mental illness. Reasoning that the employee's actions were caused by illness, the arbitrator found that the discharge was without good cause and ordered that the employee be reinstated.

This court affirmed the arbitrator's decision, but the Supreme Court later reversed the decision on the ground that the arbitrator had failed to comply with the essence test. The contract provided that the LCB could not discharge an employee without "just cause." *Id.* at 270, 553 A.2d at 950. Although the contract did not define "just cause," the LCB's published rules provided that an employer had just cause for dismissing a worker who committed "[t]heft of commonwealth funds" or "serious violations of other procedures." *Id.*

The arbitrator agreed with the LCB's findings that the employee had committed the alleged acts of impropriety. Because these findings established just cause, the Supreme Court concluded that the arbitrator had no reason to continue the inquiry. Furthermore, the court stated that "concepts of culpability and mitigation applicable in criminal law are not applicable to this area." *Id.* at 276, 553 A.2d at 953.

In rejecting the notion that the arbitrator's award of reinstatement represented a reasonable interpretation of the contract, the Supreme Court noted that the LCB was responsible for a great deal of merchandise and money. Thus, the Supreme Court determined that it would be "manifestly unreasonable" to conclude that the LCB had "bargained away its power" to dismiss an employee who has committed theft. *Id.* at 277, 553 A.2d at 953. This aspect of the decision provides the basis for the argument presented by the union in the present matter.

Specifically, the union argues that *Pennsylvania Liquor Control Board* stands for the proposition that an arbitrator may modify a termination penalty if reinstatement of a

---

1. A brief and reply brief for *amici curiae* have been filed jointly by Pennsylvania State Education Association, the Association for Retarded Citizens of Pennsylvania, and Pennsylvania Protection and Advocacy, Inc.

2. The arbitrator stated that she believed that reinstatement without full back pay would have been the appropriate remedy. R. at 20a.

discharged employee would not result in a violation of public policy. Unfortunately, the union has relied on a provision of the *Pennsylvania Liquor Control Board* decision that cannot be applied in this particular instance.

 In some cases, public policy concerns have influenced decisions to terminate the employment of grievants. *See, e.g., Philadelphia Housing Authority* (finding that employer could not have intended to bargain away its responsibility to maintain the integrity of its security force); *Manheim Central Education Association v. Manheim Central School District*, 132 Pa.Cmwlth.Ct. 94, 572 A.2d 31 (1990) (involving allegations of immoral conduct). In these cases, however, courts were called upon to interpret contracts that did not explicitly classify the alleged offenses as grounds for dismissal. Where, as here, the arbitrator has relied on a contractual provision expressly stating that the alleged misconduct is a basis for dismissal, extraneous considerations are irrelevant. *See Pennsylvania Liquor Control Board.* Accordingly, we cannot alter the penalty merely because a violation of public policy would not result.

Furthermore, the union's position is not strengthened by our decision in *McKeesport Area School District v. McKeesport School Service Personnel Association, PSSPA/PSEA*, 137 Pa.Cmwlth.Ct. 28, 585 A.2d 544 (1990). There, an arbitrator reinstated an employee after determining that his misconduct did not provide just cause for dismissal. Significantly, the contract did not define "just cause." For precisely this reason, we held that it was "within the arbitrator's province to interpret the just cause provision." *Id.* at 32, 585 A.2d at 546. The specificity of the contractual language in the present case renders *McKeesport Area School District* inapplicable.

We also reject the union's argument that an arbitrator may alter the penalty imposed by an employer where an employee has not committed *all* of the alleged offenses. The arbitrator's dismissal of the additional offenses against Shorley is irrelevant because the contract lists the proven offense as a ground for immediate discharge.

Having reviewed *Pennsylvania Liquor Control Board,* we conclude that an arbitrator is precluded from considering principles of mitigation and culpability where he or she has found that an employee has committed an offense specified in the contract as a basis for the relevant penalty. Therefore, we agree that the arbitrator ruled correctly in determining that she was not at liberty to modify the penalty imposed by the board.

Accordingly, we affirm.

### ORDER

NOW, this 19th day of June, 1995, the order of the Court of Common Pleas of Montgomery County, dated March 15, 1994, at No. 93–23986, is affirmed.