### INTERNATIONAL BROTHERHOOD OF FIREMEN AND OILERS, LOCAL 59, Appellant,

v.

### The TOWNSHIP OF FALLS.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1996.

Decided Jan. 29, 1997.

---

Anthony C. Busillo, II, Harrisburg, for appellant.

Kevin L. Hand, Newtown, for appellee.

Before PELLEGRINI and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

International Brotherhood of Firemen and Oilers, Local 59 (Union) appeals from an order of the Court of Common Pleas of Bucks County which vacated the arbitrator's award and reinstated a disciplinary action taken by the Township of Falls (Township) against Edmund Brown (Brown).

The relevant facts found by the arbitrator are undisputed. Brown was employed by the Township as an Equipment Operator III and was responsible for operating various construction equipment such as a truck, a backhoe and a loader. On April 6, 1994, Brown pulled his truck into the Township maintenance yard to pick up a load of compost. While waiting in line, Brown decided to come back next day. As he backed up his truck, Brown's rear view was obstructed by piles of salt, cinder blocks and wood, and he failed to see a truck which had pulled in. Brown's truck tapped the front of that truck, causing damages to its hood. Brown immediately called his foreman on the radio and reported the accident.

The Township manager subsequently told Brown that he must pay the $500 insurance deductible to cover the repair cost for the truck. Based on his calculation that Brown's five-day wages would cover the $500 deductible, the Township manager gave Brown the following choices: (1) a five-day suspension without pay; (2) a payment of $500 in cash; (3) payments in installments to be deducted from his paychecks; or (4) a forfeiture of his earned vacation for five days. Brown chose to accept the forfeiture of his vacation. The Union subsequently filed a grievance on behalf of Brown, contending that the disciplinary action taken by the Township violated the collective bargaining agreement (Agreement) between the Township and the Union.[1] After the Township denied the Union's grievance, the matter was submitted for arbitration.

The arbitrator first rejected the Township's contention that its disciplinary action taken against Brown is not arbitrable. The arbitrator then reduced the discipline to a written reprimand to be placed in Brown's personnel record, concluding that the forfeiture of earned vacation was too severe. The Township appealed the arbitrator's award to the trial court.

On appeal, the trial court vacated the arbitrator's award and reinstated the discipline as imposed by the Township. The trial court concluded that the dispute was arbitrable, but that the arbitrator exceeded his authority in modifying the penalty imposed by the Township. The Union's appeal to this Court followed.

This Court's scope of review of an arbitrator's decision is limited to determining whether the arbitrator's award draws its essence from the collective bargaining agreement. *School Dist. of Philadelphia v. Philadelphia Fed'n of Teachers,* 168 Pa.Cmwlth. 671, 651 A.2d 1152 (1994), *appeal denied,* 542 Pa. 681, 668 A.2d 1141 (1995). Under the essence test, the court is required to determine whether the terms of the agreement encompass the subject matter of the

---

1. It is undisputed that the action taken by the Township against Brown constitutes a disciplinary action.

dispute. *Leechburg Area School Dist. v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981). If the agreement encompasses the subject matter, the validity of the arbitrator's interpretation of the agreement is not a matter of the court's concern because the parties in entering into the agreement bargained for the arbitrator's interpretation. *Id.*

The Union contends that the arbitrator's modification of the discipline draws its essence from the Agreement. The Township contends, on the other hand, that the dispute is not arbitrable because the Agreement does not contain a specific provision concerning discipline for a negligent conduct and that the arbitrator was not authorized to modify the penalty.

The Agreement defines a "grievance" as "a difference between the Township and the Union in the interpretation or application of a specific provision of the Agreement." Article XXVIII. Provisions related to disciplinary actions are contained in Article VII (Safety and Health) and Article VIII (Recruiting for Vacant Position). Article VII provides that "[t]he Township reserves the right to take proper disciplinary action for violation of established rules and regulations." Article VIII provides that an employee must have a clear work record to be considered for promotion and that "[a]ny disciplinary action against the employee will be reviewed by the Township and the Union."

The arbitrator concluded that although the disciplinary actions are mentioned only in Articles VII and VIII, the Union's right to grieve any disciplinary action is implied from the entire provisions of the Agreement. The arbitrator reasoned that if the Township is permitted to unilaterally discipline the Union members, it could ignore or get around other provisions of the Agreement related to the employees' essential working conditions, such as the seniority right and right to recall.

■ It is well established that an arbitrator's award must be upheld, if it can in any rational way be derived from the agreement in light of language, context and other indicia of the parties' intention. *Pennsylvania State Education Ass'n with Pennsylvania School Service Personnel/PSEA v. Appalachia Intermediate Unit 08*, 505 Pa. 1, 476 A.2d 360 (1984). Since the arbitrator considered the terms and context of the Agreement and reasonably concluded that the grievance is arbitrable, we may not overturn that interpretation on appeal.

■ As to the merits of the grievance, the issues presented by the parties for the arbitrator's consideration are: (1) whether Brown was "disciplined for proper cause"; and (2) if not, what the remedy should be. Arbitrator's Decision, p. 2. Because the Agreement itself does not define the term "proper cause" or "just cause," it was within the arbitrator's province to interpret that term. *McKeesport Area School Dist. v. McKeesport School Service Personnel Ass'n, PSSPA/PSEA*, 137 Pa.Cmwlth. 28, 585 A.2d 544 (1990).

In *American Fed'n of State, County & Municipal Employees, District Council 88 v. City of Reading*, 130 Pa.Cmwlth. 575, 568 A.2d 1352 (1990), this Court set forth seven factors to be considered in determining the existence of "just cause" for discipline: (1) Did the employer give the employee forewarning of the possible disciplinary consequences of his or her conduct?; (2) Was the employer's rule or order reasonably related to the orderly, efficient and safe operation of its business and the performance that the employer might properly expect of the employee?; (3) Did the employer make an effort to determine whether the employee in fact violated its rule or order?; (4) Was the employer's investigation conducted fairly and objectively?; (5) Did the employer obtain substantial evidence of the employee's violation?; (6) Has the employer applied its rules and penalties even-handedly to all employees?; and (7) Was the degree of imposed discipline reasonably related to the seriousness of the offense and the employee's work record? Where any one of the above factors is not satisfied, just cause for discipline does not exist. *Id.*

Applying the above tests to the facts presented at the hearing, the arbitrator found, *inter alia*, that Brown was at fault in causing the accident; although Brown had no forewarning of possible discipline for negligently causing an accident, any professional driver

would expect some kind of discipline for such accident; and the forfeiture of earned vacation, however, was too severe, considering his overall employment record showing no previous disciplinary action taken against him and the fact that the April 6, 1994 accident was his first accident during his twenty-two years of employment.

■ The Township contends that the arbitrator misconceived the issues presented by the parties and improperly modified the penalty, despite his finding of proper cause for the discipline. Contrary to the Township's contention, however, the arbitrator did not specifically state that the Township had "proper cause" for its action. He only concluded that the degree of the discipline was too severe in light of the seriousness of Brown's conduct and his work record. Moreover, as the Supreme Court observed:

> The fact that this arbitrator in analyzing [the] dispute may have failed to properly perceive the question presented or erroneously resolved it, does not provide justification for judicial interference. Our inquiry ends once it is determined that the issue properly defined is within the terms of the agreement.

*Leechburg,* 492 Pa. at 521, 424 A.2d at 1313. Thus, even if the arbitrator misconceived the issues as the Township contends, his decision should still be upheld if his modification of the discipline is within the terms of the Agreement.

■ To support its contention that the arbitrator was not permitted to modify the discipline under the Agreement, the Township relies on *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988), *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989), and *Manheim Central Education Ass'n v. Manheim Central School Dist.,* 132 Pa.Cmwlth. 94, 572 A.2d 31 (1990), *appeal denied,* 525 Pa. 661, 582 A.2d 326 (1990).

In *Musser,* the county prison guards were discharged for physically abusing the inmate. The collective bargaining agreement listed the alleged conduct as one of the grounds for immediate dismissal and specifically limited the question to be decided by the arbitrator to whether the employee was discharged for just cause. The Pennsylvania Supreme Court held that the arbitrator stepped beyond the bounds of his power conferred by the agreement in reducing the discipline of discharge to a four-week suspension after finding that the grievants committed the acts as charged.

In *Independent State Stores,* the employee was discharged for committing the various acts of manipulation and misappropriation in violation of the work rules and regulations of the Liquor Control Board. As in *Musser,* the Board's rules specifically listed a class of offenses which may provide just cause for dismissal. The Supreme Court concluded that the arbitrator's finding of the grievant's commission of the charged acts established the just cause for the dismissal, and that the arbitrator's reduction of the penalty based on the grievant's mental illness could not rationally be derived from the collective bargaining agreement.

In *Manheim Central,* this Court held that the arbitrator did not have authority to reduce the penalty of the dismissal once he found that the grievant committed "immorality" prohibited by Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1122.

Unlike *Musser, Independent State Stores* and *Manheim Central,* however, the instant matter involves merely a negligent act, as opposed to a willful or immoral act specifically prohibited by the employer's rules or the statutes. Moreover, the negligent act committed by Brown is not specifically listed in the Agreement as a ground for any discipline. In fact, the Township does not dispute the testimony of the union shop steward that the Township's record showed twenty-two accidents involving its vehicles between June 1993 and June 1994, and that no other employee had ever been disciplined for negligently causing an accident. Further, in light of the nature of Brown's offense, the concern expressed by the courts in those cases that the government should not bargain away the responsibility of insuring its integrity by permitting the arbitrator to modify the penalty is not present in this matter. Consequently, the cases relied on by the Township are

factually distinguishable and not controlling in this matter.

In *Upper St. Clair School Dist. v. Upper St. Clair Educational Support Personnel Ass'n, ESPA, PSEA, NEA,* 168 Pa.Cmwlth. 1, 649 A.2d 470 (1994), the arbitrator reduced the discipline of discharge to a ninety-day suspension based on his consideration of the seriousness of the grievant's offense, the degree of discipline imposed on other employees for similar offenses and the grievant's work record. In upholding the arbitrator's award, this Court noted that the grievant committed mere negligence, and that the agreement did not specifically preclude the arbitrator from modifying the penalty imposed by the employer. *See also McKeesport* (the arbitrator's modification of the discharge of the mentally handicapped employee to a fourteen-day suspension was proper because the agreement did not preclude the arbitrator from modifying the penalty).

As in *Upper St. Clair,* Brown committed mere negligence. Further, the Agreement neither specifically gives the Township exclusive power to determine appropriate discipline nor precludes the arbitrator from modifying discipline imposed by the Township. Hence, the arbitrator had the authority to determine an appropriate sanction to be imposed for Brown's negligence, based on the seriousness of the offense, the history of the Township's disciplinary action taken for similar offenses and his work record.

Accordingly, the order of the trial court is reversed, and the arbitrator's award is reinstated.

### ORDER

AND NOW, this 29th day of January, 1997, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed, and the arbitrator's award is reinstated.